LOCAL NO. 1 (ACA) BROADCAST EMPLOYEES OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA and William Bender and Morton Borrow and Walter Jost and Anthony Evasew, Appellants in No. 79–1065,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA and Frank E. Fitzsimmons, General President and Edward Nagle, Vice President and Highway Truck Drivers and Helpers Local 107 and Louis J. Bottone, President Local 107 and John E. Smalley.

Appeal of HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL 107,
No. 79–1066.

Nos. 79–1065, 79–1066.

United States Court of Appeals, Third Circuit.

Argued Oct. 11, 1979.

Decided Jan. 16, 1980.

Motion To Amend Pleading Granted; Petition For Panel Rehearing Denied.

---

Harry Lore (argued), Philadelphia, Pa., for appellants in No. 79–1065.

Barry Wm. Levine, Leslie J. Ruben (argued), Dickstein, Shapiro & Morin, Washington, D. C., Robert M. Baptiste, Washington, D. C., for appellee International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Thomas W. Jennings, Sagot & Jennings, Philadelphia, Pa., George Kaufmann (argued), Washington, D. C., for appellee/cross appellant Highway Truck Drivers and Helpers Local 107.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Two interesting questions are presented for our review in this appeal. First, does an international union have the power under its constitution to merge two of its local unions without either's consent? The district court answered this question in the affirmative and declared valid an order of the General Executive Board of the International Brotherhood of Teamsters (IBT) directing that Local 1 (ACA), a small Philadelphia union be merged into one of IBT's larger locals, No. 107, despite the vigorous objections of each. Second, is a state contract claim by an officer of Local 1 against Local 107, as the successor body, properly pendent to the federally-based merger claim? The district court also answered this question in the affirmative and permitted the assertion of the state law claim. We agree that the merger was properly declared valid, but we conclude that the district court improperly exercised pendent jurisdiction. We therefore affirm in part and reverse in part.

### I.

In May, 1971, Local 1 elected William Bender Secretary-Treasurer and a member of the union's executive board. Bender thereafter functioned as principal executive officer and business agent for Local 1. In that capacity, he had primary responsibility for representing the local in union organization, collective bargaining, and grievance proceedings. From May to December 1971, Bender received a salary of $200 per week from the local. However, commencing in January 1972 Bender did not receive payment of his salary because Local 1 was experiencing severe financial constraints. From 1972 to 1974, Bender continued to perform all of his duties for Local 1 without payment of his salary. In March of 1974, Local 1's Executive Board adopted a resolution that Bender be paid retroactively to January 1972 on the basis of $10,000 per year "when and if the Local has the funds and $12,500 for the year 1974." On June 17, 1975, the local passed a resolution to approve $15,000 a year for Bender's services in 1975. Bender, however, never received any payment pursuant to these resolutions because Local 1 lacked the financial resources.

Local 1's small size, declining membership and weak financial status did not go unnoticed by IBT. Therefore, on July 18, 1973, IBT's General Executive Board voted unanimously in favor of merging Local 1 into a larger local union. On May 2, 1974, the

Board voted to merge Local 1 into Local 115, a larger Philadelphia local. Local 115 opposed this merger and Bender and Local 1 filed suit in state court to block the merger. The lawsuit was dismissed on December 31, 1974.

Problems arose with the proposed merger of Local 1 into Local 115, apparently due to Local 115's financial condition. IBT subsequently amended its order on July 8, 1975, merging Local 1 into Local 115 and substituted Local 107 as the successor union. Both Local 1 and Local 107 opposed the merger order. On July 21, 1975, IBT directed Local 1 to comply with IBT's General Executive Order merging Local 1 into Highway Truck Drivers and Helpers Local 107. On September 9, 1975, Local 1's members were given formal notice that they were then members of Local 107.

On September 23, 1975, Bender and Local 1 brought suit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976)[1] to enjoin the merger of Local 1 into Local 107. They claimed, *inter alia*, that IBT had ordered the merger as a punitive measure for Local 1's dissident views on IBT's support for President Nixon in 1972 and on Frank Fitzsimmons' leadership as IBT president.[2] Bender tacked to Local 1's federal labor law claim a state law claim for salary, both before and after the merger, against Local 107 as the successor union.[3] The district court refused to invalidate the merger, denied preliminary injunctive relief, *Local No. 1 (ACA) v. International Brotherhood of Teamsters*, 419

F.Supp. 263 (E.D.Pa.1976), and accepted pendent jurisdiction over the salary claim. The denial of injunctive relief was made permanent in a subsequent opinion, *Local No. 1 (ACA) v. International Brotherhood of Teamsters*, 461 F.Supp. 961 (E.D.Pa. 1978), in which the court declared the merger lawful. It also awarded Bender $33,-282.37 for services rendered on behalf of Local 1 *before* the merger. Local 1 and Bender appeal from the court's denial of injunctive relief and Bender appeals from the court's denial of his salary claim for services performed after the merger of Local 1. Local 107 cross-appeals from the salary award to Bender.

## II.

The first question presented for our consideration is whether the district court properly declined to enjoin the merger of Local 1 into Local 107. It is undisputed that neither local desired the merger. The IBT Constitution, however, gives the General Executive Board discretionary power

> to merge Local Unions and other subordinate bodies under such terms and conditions and subject to such qualifications as the General Executive Board may determine, taking into consideration such circumstances as financial conditions, jurisdiction, location, and such other factors as appear appropriate in connection with the Local Unions and other subordinate bodies involved.

---

1.  29 U.S.C. § 185 (1976) provides:

    (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

2.  Local 1 vigorously supported the return of James Hoffa to the IBT presidency and even joined in Hoffa's lawsuit challenging restrictions on his role in union affairs as a condition of his parole from federal prison. *See Hoffa v. Saxbe*, 378 F.Supp. 1221 (D.D.C.1974).

3.  Bender also invoked federal jurisdiction over his salary claim under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The district court proceeded to consider the salary claim as a state claim pendent to the federally-based merger challenge without passing on the merits of 29 U.S.C. § 185 as a basis for federal jurisdiction. *See* 461 F.Supp. at 974–75. Inasmuch as Bender's personal claim for salary arising out of an alleged contract of employment with Local 1 is not a suit for violation of a contract between an employer and a labor organization or between labor organizations themselves, we discern no federal basis for jurisdiction over the salary claim under 29 U.S.C. § 185.

IBT Constitution, Article IX, § 11. Further, the International's power under its constitution to merge local unions is not dependent upon their consent. The General Executive Board has the discretion to conduct a referendum vote in the locals, but the effect of such a referendum on IBT is only advisory. *Id.*

Local 1 contended in the district court that IBT ordered the merger in retaliation for Local 1's dissident views on both national politics and internal union affairs. Local 1 argued that the merger should be enjoined as chilling both Bender's and its first amendment rights. The court rejected the argument finding that ι

the decision to merge Local 1 was the product of the IBT's conclusion, consistent with its merger policies . . ., that Local 1 was too small, financially too weak, and too ineffective to justify its existence as an independent IBT local union. Concomitantly, we find . . . that the merger was not motivated by a desire to chill the speech of Bender or Local 1 because they had opposed President Nixon or support James R. Hoffa.

*Local No. 1 (ACA), supra*, 419 F.Supp. at 285 (footnote omitted). Accordingly, the court properly declined to issue a preliminary injunction and subsequently declared the merger valid and lawful. The court directed Local 1 to transfer all union property under its control to Local 107. *Local No. 1 (ACA), supra*, 461 F.Supp. at 963.

On appeal, Local 1 challenges the merger, contending that the merger: (1) violates IBT's duty of fair representation; (2) breaches IBT's fiduciary obligations under the Labor Management Reporting Disclosure Act, 29 U.S.C. § 501 (1976); (3) is disruptive of labor-management relations; and (4) undermines union democracy. We believe, however, that in the absence of a showing that IBT either lacked the power to order the merger or that the court erred in finding that the merger had a permissible purpose, each of these contentions must fail. IBT explicitly had broad authority under its constitution to order the merger of the locals. The consent of the locals is

not required. Further, Local 1 has not argued that the district court's finding of a lawful purpose behind the merger was clearly erroneous. We therefore affirm the district court's order declaring the merger lawful.

### III.

We turn next to Bender's salary claim which presents a more troublesome issue of pendent jurisdiction. Bender argued in the district court that not only should he be paid for services rendered on behalf of Local 1 before the merger in September 1975, but also for services performed up until the court's final order declaring the merger lawful in November 1978. Bender's salary claim was premised on the resolutions passed by Local 1's Executive Board recognizing the value of Bender's services from 1972 onward and resolving that he be paid when and if the funds became available. With the merger of Local 1 into Local 107, the district court held that Local 107, as a solvent successor union, assumed all prior obligations of Local 1. 461 F.Supp. at 984.

Local 107 objected to Bender's salary claim arguing that (1) the district court did not have pendent jurisdiction over Bender's state law salary claim and (2) even if the court had jurisdiction, the resolutions passed by Local 1's Executive Board were without binding effect because Local 1 never adopted any by-laws which would authorize the Executive Board's actions. The district court disagreed with both of these contentions and awarded Bender $33,282.37 representing salary for services performed up to September 1975 when IBT gave Local 1 formal notice of the merger order. Although Bender has presented an arguable substantive claim for salary, at least until formal notice of the merger order, we are confronted with a difficult threshold question of whether the district court actually had the power to exercise pendent jurisdiction over it.

The doctrine of pendent jurisdiction permits federal courts to entertain a state law claim when it shares a common

factual basis with a substantial federal claim. We have recently reiterated the United States Supreme Court's test for pendent jurisdiction announced in *United Mine Workers v. Gibbs*, 388 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966):

> Federal courts have the constitutional *power* to exercise pendent jurisdiction when the state and federal claims derive from a common nucleus of operative fact, such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding, and when the federal claim has sufficient substance to confer subject matter jurisdiction on the court.

*Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 478 (3d Cir. 1979) (original emphasis). Whether the federal court has the constitutional power to entertain the pendent claim is normally determined on the basis of the pleadings, and not on the facts of the case developed at trial. *Id.*, at 479; *Gibbs, supra*, 383 U.S. at 727, 86 S.Ct. 1130.

There is no dispute as to the substantiality of the federal claim in the instant case. Bender in his official capacity as Secretary-Treasurer and on behalf of the membership and Local 1 brought suit to block the ordered merger with Local 107 and invoked federal jurisdiction under 29 U.S.C. § 185. To this federal claim in which he appeared in a representative capacity, Bender tacked his personal state law salary claim, based on the resolutions passed by Local 1.

The district court accepted jurisdiction over the pendent salary claim stating:

> Bender's salary claim . . . is intimately tied to the whole merger decision since it was the financially weak condition of Local 1 which led to the merger decision . . . and which also led Local 1's Executive Board to make a salary commitment that was contingent upon the local obtaining funds it did not then possess. The merger decision, the subject of all counts of the complaint, is also intimately connected with the salary claim since the merger decision extinguished forever the possibility that Local

> 1 *qua* Local 1 could obtain funds to pay Bender's salary.

461 F.Supp. at 974.

■ Local 107 vigorously challenges the district court's exercise of pendent jurisdiction, arguing that the federal merger and state salary claims neither shared a common nucleus of operative fact nor would they normally be expected to be tried in one judicial proceeding. We are constrained to agree.

Looking to the pleadings, the central thrust of the merger challenge by Secretary-Treasurer Bender and Local 1 is that the proposed merger was ordered by IBT as retaliation and punishment for prior lawful and constitutionally protected activities of Local 1. Second Amended Complaint, ¶ 24. Local 1's contention was primarily that IBT lacked power to order the merger because it was based on impermissible motives. On the other hand, the fundament of Bender's personal salary claim is services performed for Local 1 at its direction and approved or authorized by appropriate resolutions. As an individual, Bender asserts that Local 107 terminated his employment and refused to honor Local 1's salary resolutions, which Bender claims is an accrued obligation of Local 107 by virtue of the merger. Third Amended Complaint, ¶ 46. Bender does state that the attempted illegal merger was an effort by IBT to destroy whatever debt was owed to him personally by Local 1, *id.*, but such an allegation appears inconsistent with his claim that Local 107 as successor is legally obligated to pay Local 1's contractual salary obligations.

We conclude that the merger and salary claims are factually distinct and do not meet the test enunciated in *United Mine Workers v. Gibbs, supra*. The validity of the merger turns on whether IBT properly exercised its constitutional powers and whether the merger was not ordered as a punitive response to Local 1's dissident views on IBT policies. Local 1's views on international union personalities or internal union affairs, however, have nothing to do with whether Local 107 was legally obligated to pick up Bender's salary, assuming that

Local 1 had contracted to pay it.[4] The salary claim turns on whether the service rendered to Local 1 by Bender and, the action of Local 1's Executive Board in passing two salary resolutions, created a contractual obligation to Bender. That activity is wholly independent of the validity of the merger action and, as we see it, is not derived "from a common nucleus of operative fact."

The lack of a common nucleus of operative fact is underscored by the inconsistent nature of the relief sought by Local 1 and the co-plaintiff Bender. Local 1 is attempting to have the merger *invalidated*, which would effectively relieve Local 107 of the payment of any claim Bender has for salary. But Bender in his individual capacity is endeavoring to obtain payment of his salary claim from Local 107. Satisfaction of Bender's salary claim, however, depends upon services rendered to Local 1 and its ultimate validity depends solely upon that relationship, not on the merger. Payment of Local 1's debts by Local 107, including the obligation, if any, to pay Bender's salary claim, depends upon the merger, but that matter is significantly different from the initial question of whether Bender has a valid state claim for salary. Thus, on the one hand, the plaintiffs, including Bender in his representative capacity, assert federal jurisdiction for the purpose of restraining the merger and having it declared invalid. On the other hand, Bender as an individual has added an independent state contractual claim for salary which may not be paid even if the merger is sustained until the validity of the contractual claim is initially and separately determined. The merger and salary claims, far from sharing a common nucleus of fact, are in reality independent of each other. This case, therefore, is not similar to one in which an individual has both a federal and state claim based on the same operative facts.

4. The district court's argument that the financial condition of Local 1 was common to both the merger and salary claims would appear to be based on the facts as developed at trial and not the pleadings. IBT did prove at trial that the financially weak condition of Local 1 was the permissible motive behind the merger.

The independent nature of the claims leads us to conclude that the merger and salary claims ordinarily would not be tried in one judicial proceeding. The merger claim involves federal labor policy and the relationship of the IBT to its locals. The salary claim involves a purely personal state law contractual claim. We do not believe that a federal court, in the usual course of adjudicating the validity of a merger of two locals, would also normally resolve personal state law claims involving the surviving local's obligations to employees of the merged body. Such claims, absent diversity jurisdiction, belong in a state court where issues of state contractual law should properly be tried.

IV.

We therefore hold that the district court lacked power to exercise pendent jurisdiction over Bender's salary claim. The cross-appeal in No. 79–1066 is sustained and the judgment in favor of Bender in the amount of $33,282.27 will be vacated and the case remanded to the district court with instructions to dismiss the salary claim for lack of federal jurisdiction. The judgment of the district court in No. 79–1065 declaring the merger of Local 1 and Local 107 valid will be affirmed.

Each side to bear its own costs in the appeal and cross-appeal.

## MOTION TO AMEND PLEADINGS UNDER 28 U.S.C. § 1653 AND PETITION FOR PANEL REHEARING

Subsequent to this court's decision in *Local 1 (ACA) v. International Brotherhood of Teamsters*, 614 F.2d 846 (3d Cir. 1980), William Bender, one of the appellants in No. 79–1065 has moved this court pursuant to 28 U.S.C. § 1653 (1976)[1] to amend the pleadings to cure any defective allegation of diversity jurisdiction as to his

1. 28 U.S.C. § 1653 (1976): "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."

claim for salary against Highway Truck-drivers and Helpers Local 107 and the International Brotherhood of Teamsters (IBT). He also petitioned for rehearing before the original panel asserting that there is diversity jurisdiction.

Although Bender's second amended complaint pled jurisdiction under 28 U.S.C. § 1332(a), his complaint alleged only that he was a citizen of New York, that IBT had its headquarters in Washington, D.C., and did business in Philadelphia and that Local 107 had its principal place of business in Philadelphia, Pennsylvania. Under the Supreme Court's decision in *United Steelworkers of America v. Bouligny*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), however, an unincorporated association such as a labor union has no citizenship for diversity purposes apart from the citizenship of its members. *See Carlsberg Resources Corp. v. Cambria Savings & Loan*, 554 F.2d 1254, 1259 (3d Cir. 1977). Further, under the established principle of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), diversity must be complete between the plaintiff and all defendants. Bender's pleading is therefore defective because it does not plead diversity between Bender and each member of the unions.

We have the authority, however, under 28 U.S.C. § 1653 to permit an amendment to the pleadings to cure defects in jurisdictional allegations. In *Berkowitz v. Philadelphia Chewing Gum Corp.*, 303 F.2d 585, 587 (3d Cir. 1962), we permitted such an amendment to cure a defective allegation of diversity. Although the grant of a section 1653 motion is discretionary, we believe we should exercise that discretion in favor of the appellant because he has the benefit of a judgment in the district court and amendments should be liberally permitted in the interest of justice to avoid dismissal of suits on purely technical grounds. *See Moore v. Coats Co.*, 270 F.2d 410, 412 (3d Cir. 1959). Thus, we will grant Bender's section 1653 motion to amend his complaint to alleged diversity jurisdiction.

Bender has also petitioned the court for a panel rehearing on the merits of his salary claim, because, he asserts, diversity jurisdiction exists in this case. We are unable on the present record to ascertain whether complete diversity in fact exists. Bender's complaint mentions that Local 107 itself has approximately 8,000 members. We have no way of determining whether all the members of the unions are non-New York citizens so as to establish diversity jurisdiction. We must therefore remand to the district court for further proceedings and determination whether diversity of citizenship exists in this case for Bender's salary claim. *See Berkowitz, supra*, 303 F.2d at 588. We will, nonetheless, retain jurisdiction over this action pending the district court's determination of jurisdiction.

Accordingly, the petition for rehearing will be denied and the case remanded to the district court for further proceedings not inconsistent with this opinion.